## Hazeltine *v.* Colburn.

A notice to a tenant, holding under a written lease, to quit on the day his lease expires, or on any day after, if served seven days before that day, will be sufficient to support an action against the tenant, if he holds over, under the landlord and tenant act.

A notice to quit, left at the house of the tenant in the hands of his wife, is competent evidence of a service on the tenant.

This was an appeal from the judgment of a justice of the peace. The action was brought under the provisions of chapter two hundred nine of the Revised Statutes; and in the court below, judgment was rendered in favor of the original plaintiff; from which judgment the defendant appealed. The original writ bore date, May 16th, 1854.

It appeared at the trial, that the defendant had occupied the premises in question under a sealed instrument, which purported to have been made on the 6th day of December, 1853. The habendum of this lease is as follows: " To have and to hold the same to him, from the date hereof, for the term of five months, being till the sixth day of May, 1854."

The plaintiff then offered evidence tending to show that on the sixth day of May, 1854, a written notice was left at the residence of the defendant, requiring him to quit the premises on the fifteenth day of the same May. It appeared, however, that the defendant, though within the State, being absent from home, the notice did not come to his knowledge till the thirteenth day of the same May. The defendant objected, that this notice was not sufficient, and the court sustained the objection ; to which ruling the plaintiff excepted.

The plaintiff then offered to prove, by way of obviating the want of actual notice, the following facts, viz : that the notice was left at the usual place of abode of the defendant, in the hands of his wife, and other members of defendant's family, on Saturday, the sixth day of May, 1854, the de-

fendant being absent at Wentworth, sixteen miles from home, and he did not return home till Saturday, the thirteenth day of said month of May, when the notice came into the hands of the defendant personally, and he then pretended to make arrangements to quit the premises, agreeably to the notice, and did on the day named in the notice for quitting, pretend to quit the premises, leaving all his goods and furniture on the premises, and left the same in the possession of his son-in-law, Wm. R. Clark, and having made a fraudulent arrangement with said Clark, that he, the defendant, might occupy the premises, and have a home there; and the plaintiff further offered to prove that the defendant has in fact occupied the premises ever since, and had a home there, together with said Clark.

The plaintiff further offered to show that the defendant occupied the premises with said Clark some months prior to said thirteenth day of May, and that the defendant had in fact occupied the premises since said thirteenth day of May, 1854, in conjunction with the same persons that he did prior to that time.

The court ruled that these facts, if proved, were not sufficient to maintain the plaintiff's action, in the absence of proof of due notice; and thereupon a verdict was taken for the defendant, subject to be set aside and a new trial granted, or judgment to be rendered on the verdict, as the opinion of the superior court should be on the foregoing case.

*H. & G. W. Bingham,* for the plaintiff.

The question in the case is, whether the leaving of the notice at the defendant's usual place of abode, and on the premises in question, in the hands of his wife and other members of his family is sufficient service.

We say it was, and to sustain the position, cite 2 Stark. Ev. 528, 529; 2 Greenl. Ev. § 324; *Jones* v. *Marsh,* 4 D. & E. 464; 2 Bac. Ab. Ejectment B. and notes; *Smith* v. *Hurst,* 1 H. B. 644.

*Felton* and *Hibbard,* for the defendant.

There were two objections to the notice; 1st, that it was given a day too soon; 2d, that it was not delivered to the defendant, nor brought to his knowledge, though he was within the State, until three days before the day appointed for his leaving the premises.

I.   The plaintiff's ground of action is, that the defendant held over after the expiration of a definite written lease, and is founded upon the fourth section of chapter 222 of the Compiled Statutes.   The habendum of the lease was, " To have and to hold the same to him, from the date hereof, for the term of five months, being till the sixth day of May, 1854."   The notice was left May 6th.   It is believed that a term of five months from November 6th, would not expire before the 6th of the following May, and would include that day.   Nor does the latter clause of the habendum seem to alter its effect.   Construing these clauses separately, or together, then, the tenant must at least have the sixth of May in which to leave.

This view is strengthened by reference to section twenty-fifth, chapter first of the Compiled Statutes, and to section seventh of the same chapter.   These sections are imperative.   By section twenty-fifth, " When time is to be reckoned from any day, date, act done, or the time of any act done, either by force of law, or by virtue of any contract hereafter made, such day, date, or the day when such act is done, shall not be included in such computation."

By section seven, " The words *month,* and *year,* shall be construed to mean a calender month or year, unless otherwise expressed."

The twentieth of the rules of court, fixing the time of notice for the caption of depositions, excludes both the day of the service and the day of the caption, in the computation of the required time.

If the sixth of November is excluded in this computation, the defendant's term of five months had not expired on

the sixth day of May. He had not held over after the expiration of his written lease, and plaintiff's notice to quit was premature. *Clapp* v. *Paine*, 6 Shep. 264.

II. The notice, though previously left at the defendant's residence, was not given to him, nor in any way brought to his notice, till three days before the time proposed for his quitting. The statute requires that the notice be given to the tenant. Comp. Stat. ch. 222, § 1. In writs of summons, *scire facias* and review, in suits where the defendant's property is attached, and in the taking of depositions, (in all of which proceedings notice may be by leaving at the last and usual place of abode,) the statute prescribes that as one of the admissible modes of service, in terms. This fact gives significancy to the omission of any such provision, in case of notice to quit. Comp. Stat. ch. 134, §§ 2, 3, 5; ch. 200, §§ 15, 16. So of notice of property destrained for taxes, ch. 48, § 2; so of hearing upon petitions for highways by selectmen, ch. 52, § 3; so of notice of taxes by highway surveyor, and time and place of working out, ch. 59, § 5; so of probate notices, ch. 164, §§ 3, 4. The distinction between the two modes of notice is kept up, and runs through the whole body of the statutes.

The continued and careful use, in all these statutes, of the alternative phrases, "giving," or "delivering to," and "or leaving at the last and usual place of abode," &c., seems to indicate the purpose of the Legislature, that the last clause should have a signification and effect different from the first, and intend a mode of service not authorized by that. If it be otherwise, and the two mean the same thing, the latter clause is superfluous.

The words of the statute, that the lessor or owner may determine the tenancy, under certain circumstances, "by giving to the tenant or occupant a notice in writing," seem to admit of very little doubt as to their necessary and proper construction. The intention of the Legislature was that

the tenant should have not a mere constructive, but an actual notice, for the length of time prescribed in each case.

The serious and irreparable injury which the contrary interpretation must entail upon the tenant, or person sought to be charged as such, can readily be foreseen. See *Oakes v. Munroe*, 8 Cush. 282.

The matter offered to be proved by the plaintiff was properly rejected, because, if the defendant, in fact, quitted the premises after the alleged notice, it is a good defence to the action. If he did not quit, but held over, he is in a situation to object to the insufficiency of the notice.

The case, cited on the other side, from 4 D. & E., proves only that delivery of notice at the dwelling-house, is presumptive evidence of notice; and it implies that actual notice was necessary. Here the fact is found that the party had no actual notice.

*Bingham*, in reply.

If the parties agreed the lease should terminate on the 5th of May, there was no objection to that. The parties, by saying *till* the 6th of May, must have intended to restrict the inference from the previous language, which would have included the 6th; *till* the 6th, excludes that day.

But if the lease terminated on the 6th, the notice is well enough. There is nothing in the statute which requires the notice to be given after the expiration of the lease.

The 6th of May was Saturday; notice on that day would be good by analogy to notices to indorsers.

If the lease did not expire till the 6th, defendant had eight days notice after the 6th.

BELL, J. It has been long settled, at common law, that a tenant at will, from year to year, is entitled to half a year's notice to quit, and that such notice must terminate with the day on which the year expires. If the tenancy was at will from quarter to quarter, or from month to month, the length

of the notice might be equal to the interval between two of those periods, as a quarter or a month ; but the notices, in such cases, must also terminate with the quarter or month. Com. Land. & Tenant 285 ; 4 Kent's Com. 112.

Before the passage of our statutes, on this subject, in 1831, this was the law here. And the common law still regulates the rights of lessors and lessees, except in those cases where the statutes have introduced changes. By the Revised Statutes, the provisions of the earlier statute were somewhat modified and extended. The great object of both was to provide a speedy remedy for the removal of tenants, where they attempted to hold possession after their right to the occupancy had ceased, by a written notice to quit, and an action before a justice of the peace.

At common law, every tenancy at will might be presumed a tenancy from year to year, the presumption being, in England, most frequently applicable to agricultural property. But here, but little property being in fact held by tenants, except buildings in towns and villages, which are not usually let for long periods without written leases, a different rule of presumption is introduced by the Revised Statutes, every tenancy being presumed to be a lease at will, and the rent payable on demand, unless a different contract is shown.

The changes designed to be made in the common law rules, in relation to notices to quit, may be readily seen, and they seem to us but two. The length of time required to make a notice effectual is shortened. Three months notice is made sufficient in all cases, (instead of half a year,) and if the rent is payable more frequently than once in three months, thirty days notice is made sufficient; and if the tenant refuses or neglects to pay the rent due and in arrear, seven days notice is sufficient. The notice to quit may be made to quit at any day therein named, instead of the precise termination of a year, quarter, month, &c., though it is still clearly the interest of the landlord that it should termi-

nate with the pay day of the rent, because if he, by his own act, puts an end to the tenancy after the pay day, and in the midst of a year, quarter, &c., it is at least doubtful if he could recover any rent between the last rent day and the expiration of the notice.

In other respects, we discover no intention to change the common law rules. These changes we regard as equally applicable, whether the question arises in an action at common law or under the statute. In the latter case, to render a notice to quit effectual, it must be in writing, which is not required in any common law proceeding. In all other particulars, the rules of the common law, in relation to these notices, are still the rules to which we have to refer, in all cases of doubt, so far as we have observed.

By the third and fourth sections of chapter 209 of the Revised Statutes, the remedy before applicable to estates at will, was extended to two cases, where the lessee holds under a written lease, the case of a breach of condition and the case of holding over after the term has expired. In these cases, seven days notice is made sufficient, and, we think, the notices, in these cases, are to be governed by the same rules as in case of leases at will. Such notices were, in no case, required at common law ; *Cobb* v. *Stokes*, 8 East 358 ; *Messenger* v. *Armstrong*, 1 D. & E. 54 ; and they are required here only where the landlord desires to avail himself of the statute remedy.

At common law, it was not only allowed, but it was indispensably requisite that the time on which the tenant was notified to quit, should be the last day of his year, quarter, &c., and there is not the slightest ground in the statute to believe that the Legislature could have intended to make a change, by which the notice should not terminate on that day. It is obviously the interest of the landlord, in the case of a written lease, to make his notice expire with the termination of the lease. The only effect of such a notice is to entitle the landlord to avail himself of the statute rem-

edy ; and we should not readily adopt the opinion that the Legislature intended to make a difference, in this respect, between these cases. And on reading the section relating to this case, (§ 4,) we see nothing which necessarily or naturally carries the impression which seems to be assumed, that notice cannot be given until a holding over has commenced. It may as well and as naturally be read : " If any lessee shall hold over after the expiration of a definite written lease, seven days notice [before the expiration of the lease] shall be sufficient, as seven days notice [after the expiration of the lease] shall be sufficient. The object of the provision was to require a notice of seven days, without any provision as to its beginning or end, which would leave it subject to the rule of the common law, which would make the notice ineffectual, if he was required to quit when he had a right to stay ; and would make it sufficient, if it required the party to quit at any time when the landlord had a right to require him to leave. A notice, then, to a tenant, to quit on the last day of his lease must be valid, because he has no right to be there afterward, and, of course, a notice, as in this case, to leave on the ninth day after the lease expired, must be free of exception.

We have examined with care the ingenious argument of the counsel for the defendant, but are not satisfied, from any thing we find in the act, that the Legislature intended to introduce any change in the requirements of the common law, relative to the mode of serving notices to quit. No apparent design of this kind is seen, nor is any such change necessary or useful for any purpose contemplated by the act. The argument is based upon the first section of the chapter, which provides for determining leases at will. That is not this case. Here was no lease at will to be terminated. All that is said as to notice, in cases of holding over after a definite written lease, is that seven days notice shall be sufficient," without a word as to the manner of service of such notice. The argument has clearly no application to this.

case. And we are left by the statute to ascertain, from the well settled rules of the common law, what is to be deemed " seven days notice."

· The rule of the common law, on this subject, is laid down in Comyn on Land. & Tenant 320, thus: " It is not necessary that the notice, if in writing, be personally served on the tenant. It is sufficient, if it be left at his house with a servant, from which it will be presumed that it reached the tenant. In order to raise this presumption, in the absence of proof, that it reached the tenant, it must be shown to have been delivered *into* the hands of a servant, and not merely that it was left at his house. The same point is held in *Jones* v. *Marsh*, 4 D. & E. 464, and see the authorities cited for the plaintiff.

In *Smith* v. *Clark*, 9 Dowl. P. C. 202, it was held that if a notice to quit is served on the tenant's wife, at the house, accompanied with a statement that the paper delivered is a notice of discharge, it is sufficient. See *Pulteny* v. *Shelton*, 5 Ves. jr., 261, note; *Doe* v. *Dunbar*, M. & M. 10; 2 Steph. N. P. 1412; *Doe* v. *Watkins*, 7 East 553; 2 Bouv. Inst. 265; 2 Leigh. N. P. 867.

Upon these authorities, we think, the evidence of the service should have been submitted to the jury.

*New trial.*